FREDERICK E. PERKINS *et al.*, Trs., *vs.* HENRY A. KIRBY.

### JANUARY 15, 1913.

PRESENT:    Johnson, Parkhurst, Sweetland, and Vincent, JJ.

*(1)   Leases.   Conditions.   Covenants.*

No particular form of expression is essential to the creation of a condition, but if it is manifest from the terms of the instrument that a condition was intended, the estate will become defeated upon a breach thereof, and the same words may create either a *covenant* or a *condition* depending upon the intention of the parties as such intention may be determined from the context.

A clause only operates as a condition when it is apparent from the whole scope of the instrument that it was intended to operate so, and courts are in each case to ascertain the intent and give the instrument effect accordingly.

*(2)   Leases.   Conditions.   Forfeiture.*

An indenture of lease after fixing the annual rent and the time and method of its payment, provided "In case of failure to conform to all the conditions of this lease, the said lessors shall be at liberty to declare this lease at an end and terminated and thereupon to take immediate possession of the premises, etc." The succeeding paragraphs set forth the several undertakings of the parties regarding the use and care and protection of the premises, including insurance against fire, accident and boiler explosion, in none of such succeeding paragraphs repeating the word "condition," but characterizing such undertakings as "covenants," or "agreements." The provision for insurance was as follows: Certain policies of insurance "shall be assigned and transferred or made payable in case of loss to the said lessors, as their interest may appear and shall be delivered to said lessors by the said lessee and shall at all times remain in the possession of the said lessors and in default of the said lessee keeping and maintaining such insurance, then the said lessors may effect such insurance in manner as aforesaid and the premium or premiums therefor shall be paid by the said lessee." Lessee entered into possession October 1, 1911, and October 9, 1911, lessors declared the lease terminated for failure to comply with the conditions, relative to the insurance. At the time of the delivery of this notice by lessors, lessee had effected the insurance in accordance with the terms of the lease, but had not delivered the policies to lessors:—

*Held,* that a lease must, if possible, be so construed that a meaning may be given to all its parts.

*Held,* further, that under the clause "or in case of failure to conform to all the conditions of this lease," the failure of lessee to observe its requirements respecting insurance would work a forfeiture entitling lessors to effect a re-entry.

*Held*, further, that the agreement of lessee to deliver the policies was not a matter so unimportant as to excuse performance.

*Held*, further, that the power given lessors to insure in case of default was merely permissive and had no effect upon their right to declare a forfeiture.

*Held*, further, that lessors were not required to make demand for the policies before declaring a forfeiture.

*Held*, further, that the lease not fixing any time for the delivery of the policies lessee had a reasonable time within which to make delivery.

*Held*, further, that if lessee in the usual course of the insurance business had arranged to have the property covered from October 1, he was entitled to a reasonable time after that date, in which the policies could be properly prepared and delivered by the companies, and such further time as was needed to determine their correctness in form and substance and to see that they were in accordance with the terms of the lease and finally to deliver them to the lessors at their place of business.

*Held*, further, that in view of the facts the court could not say as a matter of law that the time occupied by lessee was unreasonable, but such question, being one of fact depending upon the circumstances surrounding the transaction, should have been submitted to the jury.

*Held*, further, that as the policies were offered to lessors at their place of business during business hours, if such offer was made within a reasonable time lessors were bound to accept them and their refusal to do so was immaterial.

(*3*)  *Reasonable Time.*

Reasonable time is so much time as is necessary under the circumstances to do conveniently what the contract or duty requires in the particular case should be done.

TRESPASS AND EJECTMENT.  Heard on exceptions of defendant, and sustained as to one exception.

VINCENT, J.   This is an action of trespass and ejectment commenced in the district court of the sixth judicial district where a decision was rendered for the defendant for costs. The plaintiffs then claimed a jury trial.   In the Superior Court the plaintiffs filed certain special pleas to which the defendant demurred.   The demurrer was overruled and the plaintiffs allowed to file an amended declaration. The defendant demurred to the amended declaration, which last mentioned demurrer was also overruled.   The case was then tried to a jury and a verdict rendered for the plaintiffs by direction of the court.   It now comes here upon the defendant's exceptions; (1) to the decision of the Su-

perior Court in overruling the demurrer to the amended declaration; (2) to the rulings of the trial judge admitting and excluding testimony; and (3) to the direction of a verdict for the plaintiffs.

In June, 1911, the plaintiffs, by an instrument in writing, leased to the defendant certain lands, buildings and estates, therein described, for a term of two years, beginning October 1, 1911, and terminating September 30, 1913. This indenture of lease provided, among other things, "that insurance against loss by fire shall be kept and maintained on the buildings on said premises in such office or offices as the said lessors and their successors, heirs or assigns shall approve, in the following amounts: The 'Ada Building' and the addition thereto, in a sum not less than Forty-five Thousand Six Hundred and Fifty Dollars ($45,650); the buildings and improvements on said tract of land situated at the corner of Harrison and Westfield Streets, in the sum of Sixteen Thousand Dollars ($16,000); the boilers in said 'Ada Building' in a sum not less than Fifteen Thousand Dollars ($15,000); and that accident insurance will be kept and maintained, indemnifying the parties in interest from all loss on account of personal injury, through accidents from or in connection with the elevator in said 'Ada Building,' in a sum not greater than Ten Thousand Dollars ($10,000) for any one accident, and not greater than Five Thousand Dollars ($5,000) for an injury to a single person, said policy to be in such form and with such company as the said lessors, their successors, heirs or assigns, shall approve; and that all said policies of insurance against loss by fire shall be assigned and transferred, or made payable in case of loss, to the said lessors, their successors, heirs or assigns, as their interest may appear, and shall be delivered to said lessors, their successors, heirs or assigns, by the said lessee, his executors, administrators and assigns, and shall at all times remain in the possession of the said lessors, their successors, heirs or assigns; and that said policy of accident insurance shall indemnify and save harm-

less the said lessors, their successors, heirs or assigns, from any loss on account of accidents occuring on or in connection with said elevator in manner as aforesaid, and shall be made payable to the said lessors, their successors, heirs or assigns, and shall be delivered to the said lessors, their successors, heirs or assigns, by the said lessee, his executors, administrators and assigns, and shall at all times remain in the possession of the said lessors, their successors, heirs or assigns; and in default of the said lessee, his executors, administrators and assigns, keeping and maintaining such insurance, then the said lessors, their successors, heirs or assigns may effect such insurance in manner as aforesaid, and the premium or premiums therefor shall be paid by the said lessee, his executors, administrators and assigns.''

The defendant entered into possession of the leased premises on October 1, 1911, and on the 9th of October the plaintiffs, as lessors, prepared, signed and delivered to the defendant the following notice: ''Henry A. Kirby, Providence, R. I. In exercise of the power given us by a certain indenture of lease dated the      day of June, 1911, and made between yourself, of the one part, and ourselves, as trustees under the will of Charles Henry Perkins, late of the Town of Warwick, deceased, of the other part, we hereby declare said lease at an end and terminated because of your failure to conform to the conditions of said lease requiring you to keep and maintain the insurance as mentioned in said lease and to have the policies of insurance made payable as required by said lease, and to deliver to us said policies as required by said lease and to permit said policies at all times to remain in the possession of us as required by said lease. And you are notified that we shall immediately take possession of the premises and that you are to quit and deliver up to us the premises mentioned in said lease forthwith.''

At the time of the delivery of this notice the policies of insurance, provided for in said lease, had not been delivered to the plaintiffs, but were later, on the same day,

taken to the plaintiffs' office by the defendant's bookkeeper. The plaintiffs' treasurer to whom these policies were proffered declined to receive them, whereupon defendant's bookkeeper laid them on a railing in the plaintiffs' office and withdrew. Afterwards the plaintiffs, under advice of counsel, placed the policies in an envelope, marked them as the property of the defendant and put them in their safe.

It is not claimed that the defendant neglected to obtain insurance in accordance with the terms of the lease or that at any time on and after October 1, 1911, the plaintiffs were unsecured from loss or that such insurance had been placed in companies of which the plaintiffs disapproved. The plaintiffs do claim, however, that the defendant was in default through his failure to make delivery of the policies to them and that such failure amounted to the breach of a condition of the lease and gave to them the right of reëntry under the forfeiture clause contained therein.

The defendant contends that the provision of the lease before referred to, regarding insurance, is simply a covenant and that any failure on his part to observe the same would not work a forfeiture of the lease, but would only entitle the plaintiffs to damages. The defendant claims further that when he was notified by the plaintiffs of their intention to terminate the lease a reasonable time within which he might deliver the policies had not elapsed.

The attitude of the parties, indicated by their respective claims, leads us, in the first place, to consider the meaning of the terms "condition" and "covenant" and to ascertain their significance as bearing upon the present controversy.

Numerous authorities might be cited in which a "condition" is defined to be something inserted in a deed for the benefit of the grantor giving him the power, on default of performance, to destroy the estate if he will and revest it in himself or his heirs. A "covenant" has been defined to be an agreement or consent of two or more by deed in writing, sealed and delivered, whereby either one of the parties doth promise to the other that something is

done or shall be done in the future.   While there is more
or less variation in the language employed by different
courts in defining and giving effect to these terms the de-
cisions are, in substance, practically the same.   Some of
the authorities point out various terms and expressions
having a well settled meaning and which are clearly and
indisputably indicative of the intent of the parties to the
instrument to create a condition or enter into a covenant
as the case may be.

(1)   A more extended discussion of these authorities would
not be profitable in view of the fact that we find it to be
the consensus of opinion that no particular form of ex-
pression is essential to the creation of a condition; but that
if it is manifest from the terms of the instrument that a
condition was intended, the estate will become defeated
upon a breach thereof.   In *Fowlkes* v. *Wagoner,* 46 S. W.
(Tenn.) 586, the court said, a condition "may be created
by any words which show a clear, unmistakable intention
on the part of the grantor or devisor to create an estate
on condition, regard being had to the whole of the deed or
will in which they occur."   It has even been held that the
*same* words may create either a covenant or a condition
depending upon the intention of the parties as such inten-
tion may be determined from the context.   *Chapin* v.
*Harris,* 8 Allen, 594;   Tiffany on Landlord and Tenant,
Vol. 2, p. 1363, Sec. 194.   The principle therefore upon
which this question must be determined is well settled.   The
authorities are briefly and correctly summarized in the note
to be found in 1 L. R. A. 381, as follows:   "According to
modern authorities a clause only operates as a condition
when it is apparent, from the whole scope of the instru-
ment that it was intended to operate so, or in other words,
there is no technical rule, but courts are in each case to
ascertain the intent and give the instrument effect accord-
ingly."

We must therefore determine from the examination of
the lease itself, whether or not it was the intention of the

parties to this suit that the provision covering the matter of insurance should have the force of a condition, the breach of which by the lessee would work a forfeiture and permit the reëntry of the lessors.

The lease, following the habendum, fixes the amount of the annual rent, provides for the time and method of its payment and limits the period within which such payments of rent may be made without default, the paragraph concluding as follows: "In case of failure to conform to all the conditions of this lease, the said lessors, their successors, heirs or assigns, shall be at liberty to declare this lease at an end and terminated, and thereupon to take immediate possession of the premises, in which case, the said lessee, his executors, administrators and assigns, shall be considered as tenants holding over their term." · The succeeding paragraphs of the instrument set forth the several undertakings of the parties regarding the use, care and protection of the premises, including insurance against fire, accident and boiler explosion. In none of these succeeding paragraphs is the word "condition" or "conditions" repeated, but the several undertakings of the parties specified therein are characterized as covenants or agreements. If it had been the intention to confine the right of reëntry to default in the payment of rent, the language immediately introductory to the forfeiture clause "or in case of failure to conform to all the conditions of this lease" would be useless and meaningless. A lease or other instrument in writing must, if possible, be so construed that a meaning may be given to all its parts. Bishop on Contracts (2nd Ed.), Sec. 384; 9 Cyc. 579. The use of the words above quoted seem to us to make it clear that it was the intention of the parties, in making this lease, that the failure of the lessee to observe its requirements respecting insurance should work a forfeiture and entitle the lessors in their discretion to effect a reëntry.

We think that the covenant and agreement to insure must be construed as a condition to which the right of re-

entry applies. It has been argued that inasmuch as the property had been duly covered by insurance from the beginning of the term by policies made payable to the lessors in companies not disapproved of by them, that the failure of the lessee to make delivery and place the policies in the physical possession of the lessors was a mere technical or immaterial breach which would not entitle the plaintiffs to exact a forfeiture. We do not think that the court would be justified in adopting this view. We cannot undertake to divide the obligations of the lessee under his lease into two classes, the one being of sufficient importance to require his compliance therewith and the other so unimportant that he should be excused therefrom. The undertaking of the lessee to deliver the policies, in accordance with his express agreement so to do, is not, in our opinion, a matter so trivial and unimportant that he should be excused from its performance.

While the importance of such delivery might be worthy of some consideration in reaching a conclusion upon the question as to whether the policies were delivered within a reasonable time, it would not assist us in our present inquiry as to whether or not a failure to deliver the policies amounted to the breach of a condition of the lease which would entitle the lessors to declare a forfeiture.

(2)    The power given to the lessors to insure, in case of the default of the lessee so to do, is simply permissive and can have no effect upon the right of the lessors to declare a forfeiture and terminate the lease. It is a provision entirely for the benefit of the lessors enabling them to protect their property and interests should occasion require. They have the right to procure insurance, in case of the lessee's default and charge the premiums to the lessee or they may proceed to declare a forfeiture and reënter in a similar manner as a mortgagee may insure or foreclose in his discretion. *Brown* v. *Cairns*, 63 Kan. 584; *Proctor* v. *Keith*, 12 B. Mon. (Ky.) 252; *Liggett* v. *Shira*, 159 Pa. St. 350; 18 Am. & Eng. Ency. of Law, 371. And we do not think that the lessors

would be required to make a demand for the policies before proceeding to give notice under the forfeiture clause of the lease.

The defendant claims, (1) that he did not have a reasonable time in which to make delivery of the policies of insurance prior to the notice given to him by the lessors for the purpose of terminating the lease, and (2) that the question of reasonable time was a question of fact for the jury. The lease does not fix any time within which the lessee should deliver the policies to the lessors and it therefore became incumbent upon the lessee to make such delivery within a reasonable time. A reasonable time has been well defined to be "so much time as is necessary under the circumstances, to do conveniently what the contract or duty require in the particular case should be done." *Brown* v. *Detroit City Ry. Co.*, 54 Mich. 496. In determining therefore what constitutes a reasonable time it is necessary to take into consideration all circumstances which may surround that portion of the transaction, including, among other things, the time required in the preparation of the policies and the further time which might be necessary for their careful examination by the lessee. The lessee would not be required to maintain insurance prior to the commencement of his term. If the lessee in the usual course of the insurance business had arranged to have the property covered from October 1, 1911, he would be entitled to a reasonable time after that date in which the several policies could be properly prepared and delivered by the insurance companies and such further time as might be needed to make examination of their contents to determine their correctness, both in form and substance, and to see that they were in accordance with the terms of the lease and finally to deliver them to the lessors at their place of business.

It appears from the testimony that October 1, 1911, fell upon Sunday; that the policies, which had been ordered prior thereto, were transmitted to the defendant's office by the insurance agents on the Tuesday or Wednesday fol-

lowing, while the defendant himself was absent from the
city on business; that he returned sometime during the day
Thursday and that between the time of his return and the
following Monday noon he examined the policies and sent
them to the plaintiffs' office.

Taking into consideration the foregoing facts we cannot
say, as a matter of law, that the time occupied by the de-
fendant in obtaining, examining and delivering these poli-
cies, eleven in number, covering different classes of insur-
ance and aggregating more than $70,000, was an unreason-
able time. We think that in the present case the ques-
tion whether or not the defendant acted within a reason-
able time in delivering the policies is purely a question
of fact depending upon the circumstances surrounding
the transaction and that such question should have been
submitted to the determination of the jury under proper
instructions. We do not, however, mean to say that under
no circumstances would the question of reasonable time
be a question of law for the court for we can readily con-
ceive that the failure of a defendant might be of such du-
ration that the court would be fully justified in treating
it as a question of law.

The question as to whether the several and particular
acts of the parties or their agents disclosed by the record and
relating to the delivery and acceptance of the policies on
October 9, 1911, amounted to a legal delivery and accept-
ance does not seem to us to be relevant to the present
discussion in view of the conclusions already reached.
It all depends upon the determination of the question as
to whether the delivery was undertaken within a reason-
able time. It appears that the policies were offered to the
plaintiffs at their place of business on October 9, 1911, at
1:50 o'clock p. m. If such offer was made within a reason-
able time the plaintiffs were bound to accept the policies
and their refusal so to do would be of no consequence.

The defendant's exceptions numbered from one to eight,
both inclusive, are overruled and his exception numbered

nine is sustained and the case is remitted to the Superior Court for a new trial.

*Waterman and Greenlaw*, for plaintiff.
*Charles E. Tilley*, of counsel.
*Bassett and Raymond*, for defendant.
*R. W. Richmond*, of counsel.